Huston, J.
delivered the opinion of the Court—
On the trial of this cause the plaintiff offered in evidence a deed, *and afterwards a will, both of which were rejected: on which the plaintiff suffered a non-suit, with liberty to move to take off the non-suit in the Court in banc.
To understand the case, it may be necessary to give a brief statement of things which are now matter of history, partly supported by documents which are in the archives of the state, -and partly by tradition.
Before William Penn left England, he proposed to sell lands in the province then granted to him, but of which he had not taken possession; and he granted to different persons, and to different companies, bodies of land, to be surveyed in his province. These grants differed in quantity from 5000 acres to 500. And he stipulated to lay out a city with streets, alleys and lots; and around the city to separate from the mass of lands, a certain quantity; this quantity was to.be apportioned among those who became parties to his scheme in such way that each first pur *547 chaser was to have one hundred acres of this parcel contiguous to the city, for each one thousand acres which he purchased; and of the city lots, each of those first purchasers was to have a lot or lots as appurtenant to his grant of lands. Those who had purchased five thousand acres were to have the preference in the choice of the city lots ; and where there were many having the same quantity of land, their respective city lots were to be ascertained by lot. Soon after the arrival of William Penn, he laid out the city of Philadelphia. There is in the land office a list of original purchasers, and opposite the name is the number of the lot drawn by each, or, more correctly, drawn for each, as only five of them were' present; and there is also a plan of the city, with the number of the lot in each ; and thus each first purchaser could ascertain the lot appropriated for him as appurtenant to the land agreed to be sold and laid off to him by the contract with William Penn. These terms were afterwards changed or modified, and this was the subject of much altercation, of which it is not necessary here to state the particulars. There could bo nothing more simple or more equitable than this plan, if it had all been executed immediately; but this case shows that the execution of it was long delayed. One half of those first purchasers did not come to Pennsylvania with William Penn, nor in his lifetime. The records of the land office contain all the surveys made and returned for those first purchasers ; and it is certain that many of them never applied for orders of survey, or have any drafts been returned showing that any land was appropriated for them ; I say it is certain, for as there is no evidence or tradition that any one applied for an order of survey and was refused, we must take it now, after a century and a half, that many never applied. Whore any person procured a survey to be returned for the quantity of land agreed for in England, he had a right to a city lot by the terms of the and such lot has been often spoken of lawyers and judges as appurtenant *to the land granted; and Holmes’s plan of the city has been given in dence, together with a list of first purchasers, with the number drawn written opposite the name, as evidence of what particular lot belonged to each first purchaser.
It must be borne in mind that this plan of the city, with the numbers in each lot, and this drawing for the first purchasers, took place the.year after the Proprietary landed, and a lot was drawn for every person whose name was in that list, without regard to whether he at that time had his grant of land laid off or not — in fact, few then had their grants laid off — and without knowing whether each one would ever have his land appropriated or not.
*548 A grave question or two arises here. — The lot was to go with the land, and has, I think, always been spoken of as appurtenant to it. The agreement with those first purchasers, though called a deed, designated no particular land ; it was for so many acres to be laid off in Pennsylvania. If none is or ever was designated for one of these first purchasers, can he claim the appurtenant lot, without having that to which it is appurtenant ? And if one of them sold the land, did not the lot go with it unless expressly reserved ? And if no land has been appropriated and no lot claimed for a century or more, do all the principles of quieting estates, of derelictions and abandonment apply ? But I give no opinion on these points, and come to the case before us. In the list of first purchasers, is found the name of George Green, and opposite, I take it, though it does not appear on our paper book, the No. 64, designating the number of the lot drawn for him. From all offered, and all stated in the argument, it seems, that neither George Green, nor any one claiming under him, had any land appropriated, or asked for any, or took any step in the matter until'1774, when a person alleging himself to be the great-grandson, made the deed stated in the case, which deed was offered in evidence and rejected. And this is the first point. Nothing has been said of the omission of the first name, Qeorcje, in the deed, nor of the fact that there is no evidence that this Green, was the purchaser from William Penn: no paper, or document kept by the family, is adduced to prove this fact: and I would hesitate long before I would say, that proof, if there was any, that Thomas Green the grantor, was the great-grandson of- Green, was any evidence, except his own recital, that he was the descendant of George Green the first purchaser. But I pass over that.
There is a part of the deed from Thomas Green, which the plaintiff’s counsel only noticed to say it was of no importance.— By the deed Thomas Green stipulated, that his grantee Barnabas Higgins should restore one-half of the said two thousand acres of land, together with one-half of the appurtenances thereto belonging, to him the said Thomas Green, or his assigns, &c., to have and to hold the same to the said Thomas Green, his heirs and assigns, &c. * After this deed, then, Thomas Green was a party directly in interest, as to one-half of the property in suit.
The only evidence that Thomas Green was the descendant of -Green whom he alone states to be the first purchaser, is the recital of his own pedigree in his own deed to his grantee, for his own use as to one-half of the property. Cases have been cited to show, that recitals in deeds, declarations of those related to or intimately acquainted with families, letters to such persons, *549 and inscription on tombstones, have been received as evidence of pedigree : and so they have. One of the most common errors in our profession, and in all sciences which depend on reasoning, is, to assume that a position which is partially, or even generally true, is universally true. Is there any case that the declarations of a plaintiff in a cause are any evidence of his own pedigree; or that a letter written by him is evidence of his own pedigree ? If such were evidence, there is an end of all difficulty in proving pedigree. The case of Garwood v. Dennis, (4 Binn. 314,) has been cited and relied on by both parties: the facts were so complicated, that it may fairly be said to be no authority, unless in a case precisely like it; and Chief Justice Tilghman takes care to state, that all the circumstances of it entered into his opinion. Several deeds were before the Court, some from R. Dennis alone, and two from Richard Dennis together with T. Say, the executor of John Coates the father of Dennis’s first wife, under whom the plaintiffs claimed. In this deed, some of the brothers and sisters of Mrs. Dennis joined; another, in which Dennis and one of the brothers of Mrs. Dennis joined. The opinion of the 'Chief Justico is summed up in these words: “I am of opinion, that the deeds of conveyance of R. Dennis in, which he was joined with Thomas Say, and the Coates family, or either of them, were competent evidence, and therefore there should be a new trialthus excluding all evidence of recitals in deeds executed by Dennis alone: it was the recital by others of the family or connected by intimate acquaintance with the business or transactions respecting the estate, which were evidence. Yeates did not concur; and the general principle on which he relied, that no man can make evidence for himself, is not. easily got over. In this case there is no pretence of possession or claim by Thomas Green, or those under whom he claimed previous to his deed; nor is it easy to show how friends or relations could affect the rights of infants by any acts or declarations. The books cited, 3 Starkie, 1108, and especially 13 Yesey, 564, and 4 Bibb, 458, are expressly in point, that the proof of pedigree must be given by persons who can prove, on oath, what they have heard, or seen, or read, and not by the statements of the party himself. And Thomas Green is a party plaintiff in this cause.
The plaintiff examined a witness or two, and then offered in evidence the will of William Eckhart. They showed- no convey-ance *from Barnabas Higgins, the grantor of Thomas Green. They proved that Eckhart had lost a deed. No person was called who ever saw the deed said to be lost; none of Eclchart’s family ever saw it. The plaintiff claimed under Eckhart as he alleged. To put it in the strongest way, and it is more than any witness said, the proof is that Eckhart said he *550 had such a deed. Now, this was no evidence of its existence or contents. The party has been admitted to prove he lost a deed; but that it once existed, and the contents of it, must be proved by some other than the party claiming under it. Eckhart telling his daughter that he claimed a lot in that part of the city, and saying that he would buy or had bought rails to fence it, Avas not taking possession: no Conveyance Avas shoAvn to him, and no possession in him was shown. A deed or Avill by him then would be no evidence, and this offer was properly rejected.
To attempt to take possession by Mr. Ashmead in 1808 or ’10 cannot give any effect to this Avill. Can it give any right to himself? I admit, where a man has shown any title vested in himself, slight acts of OAvnership may be considered as taking or continuing possession. But where a man has shown no other title to land, the possession Avhich will enable him after tAventythree years absence, to support an ejectment, even against an intruder, Avithout title, must have been at least an actual personal residence continued for some time.
In future decisions respecting these old rights, it may be well to refer to the act of April, 1781, (1 Smith’s Laws, 533). Though the first sections refer to unappropriated lots, yet others refer only to those actually granted by William Penn but never claimed until that time, and provide a limitation as to such claims, Avhich may be found a positive bar in most cases. The motion to take off the non-suit must be refused.
Motion refused.
Cited by Counsel, 4 Watts & Sergeant, 444 ; 2 Barr, 250; .6 P. F. Smith, 138.