## WENDELL *v.* ABBOTT.

Where a mortgagee, in 1844, made an entry on the mortgaged real estate for the purpose of foreclosing his mortgage, the affidavit of one witness to the entry, recorded in 1859, with proof of the publication of notice ·of such entry, unaccompanied by the affidavit of the party making the entry, is not competent evidence of such entry under section 16 of chapter 131 of the Revised Statutes.

Under the act of 1791, "declaring the mode of conveyance by deed," a deed of real estate must have been acknowledged or proved in the manner there prescribed to entitle it to be recorded, except where the grantor refused to acknowledge his deed, in which case the grantee might put the same on record without acknowledgment, and such record was made sufficient caution to purchasers and creditors for sixty days from the time of recording, and good and effectual during that time as though the deed had been acknowledged.

By that act, in case of such a refusal, the grantee was authorized to prove the deed in a specified way, and such proof and a certain certificate thereof were made equivalent to the grantor's acknowledgment of the deed.    It was held that such a refusal by the grantor was necessary to authorize any record of a deed not acknowledged or proved agreeably to the statute ; and that the mere fact that such a deed had been entered upon the records by the register of deeds sixty years before the trial, did not raise any presumption of such refusal.

An office copy of a deed not authorized to be recorded, is not of itself and alone competent to show the existence of the alleged original deed.

Where one offered, as evidence of reputation as to a private boundary, an office copy of a deed not acknowledged or proved agreeably to the statute, but recorded sixty years before, with no further proof as to such deed except that inquiry for it had been unsuccessful, and such deed formed no part of his chain of title, nor did the adverse party claim under it or its alleged grantor, it was held that such copy was inadmissible.

WRIT OF ENTRY, for a tract of land in Springfield, containing about thirty acres, and being part of lot No. 8, and lying northerly of and adjoining to Stony Brook road.    Pleas, the general issue as to all that part bounded east by the Smith road, and north by a line from a stake by the Smith road, on low ground, and near boggy ground, about thirty-two rods northerly of the Stony Brook road, running westerly by the southerly line of the boggy ground about 130 rods, to a stake at the northeast corner of Ezra Pillsbury's fifteen-acre piece; and a disclaimer as to the rest.

To show title to the premises, the plaintiff proved a deed from R. Jenness to himself, dated December 13, 1850 ; an assignment, dated December 30, 1850, from R. Jenness to himself, of all Jenness' rights to a mortgage from Abraham [Dorothy ?] Wendell to Sukey Wendell, and to the note mentioned in its condition ; a mortgage from Dorothy Wendell to Sukey Wendell, dated November 4, 1829, embracing lot No. 8 ; an assignment of this mortgage by Abraham Wendell and his wife, Sukey Wendell, to R. Jenness, dated August 13, 1840 ; also, the note mentioned in its condition ; an office copy of John Wendell's will, which was proved August 15, 1808, and devised the demanded premises to Dorothy Wendell as residuary legatee ; a power-of-attorney, dated May 30, 1844, from R. Jenness to J. W. Emery, to take possession of all of lot No. 8, in Springfield, not before sold, for the purpose of foreclosing the last mentioned mortgage.    The plaintiff also offered the affidavit of Benj. Colby, that, at the request of said Emery, as Jenness' attorney, as a witness to the entry on the 7th day of June, 1844, he saw said Emery, as such attorney, peaceably enter into all of lot No. 8

not before sold, embracing the premises in dispute, for the purpose of foreclosing said mortgage, and take quiet possession thereof for that purpose, together with evidence of the publication of the affidavit, and of notice of the entry for the purpose of foreclosing the mortgage.    This affidavit was recorded in the Sullivan county records, September 6, 1859.    The defendant objected to the admission of this affidavit, because it was not accompanied by the affidavit of the agent who made the entry, but the court admitted it.

It appeared that Abraham Wendell, as attorney for Dorothy Wendell, some thirty or forty years ago, entered on lot No. 8, and surveyed and sold to one Tuck sixty acres from its north end, the survey being made by Benj. Colby.    Also, that as attorney for R. Jenness, he sold fifteen acres from the westerly part of the lot, to Ezra Pillsbury, which were located directly north of another fifteen-acre tract, sold off to Samuel Evans, sometime prior to 1805, and were surveyed by one Young, at the time of the conveyance to Pillsbury, and that the southwest corner of the Pillsbury lot, and the northwest corner of the Evans tract were identical; and a marked spruce, eighty rods from the south side of lot No. 8, was admitted to have been the northwesterly corner of the land in dispute.    There was also evidence that, some five or six years ago, after the deed to the plaintiff, and prior to the date of his writ, Abraham Wendell, as attorney for the plaintiff, entered, bargained and surveyed to one Ferry part of lot No. 8, one Sanborn acting as surveyor.    To show title in John Wendell to lot No. 8, the plaintiff offered an original deed, dated March 13, 1769, acknowledged March 18 and 19, 1769, recorded in the registry of the Province of New-Hampshire, January 14, 1771, and in the Sullivan county registry, September 5, 1860, from W. Jones and others to John Wendell, conveying their several proprietary rights under the charter of Springfield, otherwise Protectworth, as original grantees under the same.    This deed was shown to have come from the possession of those holding title under its grantee.    The defendant objected to its admission, unless it were first shown that possession consistent with it had continued down to the present time.

For the purpose of showing acts of ownership and possession under this deed, the plaintiff offered, among other evidence, a plan of lot No. 8 and some adjoining lands, purporting to have been made by J. Paige, upon a survey on June 26, 1793.    The plan was shown to have been found among the papers of John Wendell, who is dead, and has the marks of an ancient original paper.    Near the bottom of it is an original memorandum, in the hand-writing of John Wendell, dated August 29, 1793.    There was evidence that the defendant once told Abraham Wendell that his line went according to J. Paige's plan, and that he should hold according to it. The court admitted the plan, subject to the defendant's objection, for the purpose stated.

For the same purpose, the plaintiff offered an office copy of a deed from John Wendell to James Hogg, dated August 29, 1794, duly signed, sealed and witnessed, but not acknowledged, recorded in the Cheshire county registry, December 13, 1800, conveying

thirty-seven acres of land in Protectworth, now called Springfield, in the county of Cheshire, and to be taken off the two hundred-acre lot No. 8, on the south side thereof, in the following manner, agreeably to the plan exhibited by J. Paige : namely, beginning at the southwesterly corner of lot No. 8 ; thence on the south line thereof to the southeasterly corner thereof ; thence on the easterly line of said lot about forty rods, until it meets boggy or low ground ; thence running as said boggy or low ground runs, westerly to the west line of said lot, and about eighty rods from the said southwesterly corner ; thence on said westerly line the said eighty rods, to the first mentioned corner—to contain thirty-seven acres of upland only. [At the date of the record, Springfield was part of Cheshire county, but was subsequently included in the county of Sullivan.]

To show diligent search for the original deed, Abraham Wendell and one Sanborn testified that, under the instruction of counsel, they had made due inquiry wherever James Hogg had resided, or where said original deed might reasonably be presumed now to be, and that the original could not be found. The court admitted this copy, subject to the defendant's objection, for the purpose stated: Other subsequent acts of ownership and possession of lot No. 8 were shown by the plaintiff, and thereupon the court admitted the deed from Jones and others to John Wendell, subject to the defendant's objection. The plaintiff showed, by the proprietors' records of Protectworth, that Jones and the other grantors in said deed were original proprietors of that town, and entitled to hold lot No. 8 as such, and by a copy of the charter of Protectworth, that they were grantees under that charter.

The tenant claimed the southerly part of lot No. 8, and traced his title, through sundry mesne conveyances, to a deed from Charles Church, formerly Charles Hogg, to Moses Eastman, dated August 1, 1805, embracing ninety-six acres of land, being part of lots Nos. 1 and 8, beginning at a stake on Wendell's line, and being about thirty-seven rods to the west of the southerly corner of lot No. 1 ; thence running north 31° east, to the highway leading to New-London ; thence crossing said highway, running northerly upon the west side of said lot ; thence running by said highway about forty rods, to boggy or low ground ; thence running westerly by said boggy or low ground about 120 rods, to a stake ; thence running southerly by land owned by Samuel Evans, to a stake, to the south line of the lot, it being No. 8, &c.

The chief controversy was as to the true location of the line between the north part of the defendant's land and the south part of the plaintiff's, in No. 8. There was but little dispute as to the true northwest corner of the defendant's land, but there was more doubt as to its true northeast corner, which the defendant claimed to be a stake standing near the brook which runs from the bog to Baptist Pond, and about thirty rods northerly of the Stony Brook road, where he claimed was the commencement of the low and boggy land ; while the plaintiff claimed that the defendant should be limited to the Stony Brook road, which he alleged was about forty rods on the easterly line, and northerly from the corner of lot No. 8.

The defendant showed many acts of ownership tending to prove an open, peaceable and uninterrupted possession of the land in dispute between the Stony Brook road and the boggy ground for twenty years, and that his line had been agreed to by a former owner of his land and the agent of the plaintiff; but the plaintiff claimed that these acts tending to show possession were mere trespasses. Under the instruction of the court, this testimony was submitted to the jury, for them to locate the true line between the parties.

As rebutting testimony, the court allowed the plaintiff to use the Paige plan, and also the deed from John Wendell to James Hogg, as evidence of reputation of boundary. The defendant offered evidence that Charles Church occupied the south part of lot No. 8, and claimed for his north line up to low and boggy land, and that this occupation was for some years prior to 1805.

The plaintiff offered an office copy of a deed from James Hogg to Charles Church, dated in 1794, duly executed and recorded, for the purpose of showing reputation as to boundary; but it not appearing that due diligence had been used to find the original, it was excluded.

The jury having returned a verdict for the plaintiff, the defendant moved to set the same aside, for error in the aforesaid rulings.

*Cushing*, and *Morse*, for the defendant.

1. The affidavit of Colby was not admissible, except by force of the statute. By the Compiled Statutes 292, sec. 16, the affidavit of the party making the entry and the witnesses, is made evidence. It is going a great way to permit the affidavit of the party and witnesses, taken without notice or cross-examination, to be used as evidence; but the statute provides the check of the party's affidavit, in connection with that of all the witnesses.

This affidavit tended to show an entry in 1844, and without it the plaintiff could not maintain his action; for the only entry shown within twenty years was six years ago, when twenty-four years had elapsed since the next preceding entry, so that the statute of limitations had taken effect.

2. The plan did not tend to show any possession. It is possession under a deed which dispenses with proof of its execution, and not claims or acts unaccompanied by possession. *Clark* v. *Wood*, 34 N. H. 447.

3. We know of no authority for the use of an office copy as a copy, unless the deed had been duly acknowledged. The copy of the deed, Wendell to James Hogg, was improperly admitted. Neither party claimed under that deed, and there was no evidence that such a deed ever existed. The search had no tendency to prove its existence. The plaintiff should have first proved that there was such a deed, and then accounted for its absence, as it was no part of a chain of title. The production of the copy was not evidence of the existence of the original here.

4. Evidence of reputation of boundary is only admissible where the boundary is a matter of general and public interest, which this was not. 1 Greenl. Ev., sec. 144.

*Everett,* and *Edes,* for the plaintiff.

The Compiled Statutes 290, sec. 14, prescribe the several modes of foreclosing mortgages, but do not limit the proof. Section 16 prescribes the mode of perpetuating the evidence, and makes the evidence so perpetuated admissible, but does not preclude other evidence. It was the intent of the Legislature to make any evidence so perpetuated admissible, though all that might be so perpetuated is not offered. By supplying the ellipses, and making "and" connect sentences instead of words or phrases, the section may be construed to admit the affidavit of the witnesses, though unaccompanied by the affidavit of the party. Also, "and" may be construed as "or." Bouv. Law Dict. 298, "Construction." The defendant's construction would require the printed notice to be recorded and offered in evidence, and would preclude the admission of the affidavits, where the entry is by an agent, because there could literally be no affidavit of the party. But if Colby's affidavit was inadmissible, the verdict still ought to stand; for the plaintiff showed a sufficient title without it, and could, as the assignee of the mortgage from Dorothy Wendell, maintain the action without foreclosure. He shows entries within twenty years : one was six years ago, and another, as attorney for Jenness, must have been between 1840 and 1850, for that was the time of Jenness' title. The statute of limitations, if pleaded by the mortgagor, would not bar him ; much more should his title be good against a mere wrong-doer. The case should be amended, so as to show the assignment of this mortgage by Jenness to the plaintiff in 1850.

2. The plan shows an entry on the premises and survey by John Wendell, under whom the plaintiff claims. *Parker* v. *Brown,* 15 N. H. 176 ; *Woods* v. *Banks,* 14 N. H. 111 ; *Jones* v. *Merrimack River Co.,* 29 N. H. 381 ; *Cobleigh* v. *Young,* 15 N. H. 493 ; *Little* v. *Downing,* 37 N. H. 355. The defendant also had recognized it as showing the line in controversy. The title to the lot was in John Wendell, and the descriptions of the deeds correspond with the plan, which shows what was then considered the boggy land.

3. The deed, Wendell to James Hogg, refers to the plan, and describes a part of lot No. 8, sold to James Hogg, by the same description of the line in controversy, and the same distance on lot No. 8, as the deeds of the defendant, and tends to show seizin of lot No. 8 in Wendell, and also the line in controversy. It was admissible to show either of these facts, and the defendant, not claiming under Wendell, could not take advantage of its not being acknowledged. *Montgomery* v. *Dorion,* 6 N. H. 253 ; *Forsaith* v. *Clark,* 29 N. H. 422. It was offered as tending to show reputation of boundary, and not title otherwise. 1 Greenl., secs. 141–5, 128 ; 2 C. & H.'s Notes to Phill. Ev. 343 ; *Willey* v. *Portsmouth,* 35 N. H. 303 ; 1 Phill. Ev. 198 ; *Shepherd* v. *Thompson,* 4 N. H. 113 ; *Smith* v. *Powers,* 15 N. H. 437 ; *Little* v. *Downing,* 37 N. H. 355 ; *Whitehouse* v. *Bickford,* 29 N. H. 480 ; *Gibson* v. *Poor,* 21 N. H. 441.

4. Though reputation of boundary may only be admissible in England where the boundary is a matter of public or general inter-

est, it is otherwise in most of the United States and in New-Hampshire. 1 Greenl. Ev., sec. 145, n, and authorities above.

5. The book of the Cheshire registry containing the record of this deed might be given in evidence, as tending to show ancient reputation of boundary, and if so, a transcript of the material part of it was competent.   Authorities above.

BARTLETT, J.   Our Revised Statutes provide that, in case of the peaceable entry of a mortgagee of real estate into the mortgaged premises, for the purpose of foreclosing his mortgage, the affidavit of the party making such entry, and of the witnesses thereto, as to the time, manner and purposes of the entry, and a copy of the published notice, verified by affidavit as to the time, place and mode of publication, recorded in the registry of deeds for the county in which the lands lie, shall be evidence of such entry and publication. Rev. Stat., ch. 131, sec. 16.   Such evidence is admissible only by virtue of the exception which this statute has created to the general rules of the common law ; and statutes in derogation of the common law are to be strictly construed.   Bac. Abr., Statute I ; *Lovejoy* v. *Jones*, 30 N. H. 170.   Whoever, therefore, would avail himself of the provisions of the statute in question, must show a full compliance with its terms.   The plaintiff has not done this, for he offered the affidavit of one witness only, without the affidavit of the party making the entry ; and this evidence, not conforming to the requirements of the statute by which alone it could be admissible, was incompetent.   The Legislature may have required the affidavits of the party and the witnesses as a prudent precaution against fraud or mistake, when they saw fit to allow evidence to be thus received, without the ordinary safeguards provided by the common law.   But whatever may have been the reason of the requirement, it is sufficient that it is contained in the statute construed, as it must be, according to the familiar principle already stated.   We have not considered any question arising from the lapse of time between the alleged entry and the record of the affidavit.

Whether the affidavit was material in this case we need not inquire, as the verdict must be set aside because of the admission of the office copy of the deed from John Wendell to James Hogg, as evidence upon the question of boundary.   It is unnecessary to decide whether the original would have been evidence upon that question in favor of the plaintiff, who claimed title under John Wendell, as being, at the date of the deed, owner of lot No. 8, for neither the deed nor any evidence of its existence, except the office copy, was produced.   The defendant did not trace title to John Wendell, and the copy was not offered as part of the chain of title of either party ; and the fact that an unsuccessful search had been made for the alleged original, has, in itself, no tendency to prove that such an original ever existed.

Where the law does not require or authorize an instrument to be recorded, an office copy of the record is not, in general, admissible in evidence.   1 Greenl. Ev., secs. 485, n, 572, n.   This principle is too familiar to require the citation of the numerous cases in which

it is asserted. Whatever seeming exceptions may exist, we think no well considered case will be found where an office copy of an unauthorized record, unaccompanied by other evidence, has been admitted as proof of the existence as well as contents of the alleged original, unless under the special provision of some statute. In *Allen* v. *Parish*, 3 Ham. 107, there was independent evidence of the former existence of a deed more than twenty years old, which appeared to have been either destroyed, or in the hands of the parties claiming adversely to it. The original book of a deceased notary, containing what purported to be a copy of the deed, from which the acknowledgement appeared to have been taken by him, was admitted, the whole evidence tending to show the correctness of the copy, and it appearing that the witnesses and parties were dead. From the case it would seem, also, that there had been possession according to the deed. In *Garwood* v. *Dennis*, 4 Binn. 314, the testimony of the former deputy recorder of deeds for Philadelphia tended to show that the original deed in question, which was an ancient one, was brought to him, while deputy recorder, for registration ; that it then bore a certificate of registration in Newcastle county, Delaware ; that he entered an abstract of the deed in a book of abstracts, as he was required by law to do ; and that, before the deed was recorded, it was borrowed from the office and never returned. He produced a copy of the entry in the book of abstracts, and testified to its accuracy. The book itself had, by law, been transferred to the land office, because it contained another class of entries, and there was no one in that office authorized to certify copies of these abstracts. There was evidence of the existence of the deed aside from the abstract, and of its loss, and the possession had not been inconsistent with the deed. The same deed had also been recorded in Newcastle county, Delaware, but the acknowledgement, though sufficient under the laws of Pennsylvania, was not in the form required by the laws of Delaware, where a portion of the granted premises lay. Upon trial, an office copy of the record in Delaware was admitted. Upon a motion for a new trial, the competency of this copy was not properly in question, as the verdict was against the party by whom it had been offered. However, *Tilghman*, C. J., assumes that a copy of that record was evidence, though his attention seems to have been directed rather to the competency of the record, or of a properly proved copy, than to the sufficiency of the recorder's certificate. But *Brackinridge*, J., held that the certified copy, as such, was inadmissible ; while the remaining justice, *Yates*, before whom the trial was had, expressed no opinion upon this point. However this may have been, the case is not an authority to show that the existence of the original deed could be proved by the mere production of such copy. In *Winn* v. *Patterson*, 9 Peters 666, there was evidence of the existence and loss of an ancient power-of-attorney, which had been recorded, but not in the county where the lands lay ; and it was said that it was not required by the laws of Georgia that such an instrument should be recorded in the county where the lands were situated. The officer who recorded the instrument testified that the record was a correct

copy of the original, and that the copy of the record which he produced was accurate. In *Jackson* v. *Rice*, 3 Wend. 180, an exemplification of the record of a deed, registered in the wrong county, was received as secondary evidence, after proof of the existence and loss of the original deed; but there seems to have been evidence of the correctness of the exemplification. The annotators upon Phillips' Evidence say of this decision, that "the court seem to have regarded the case as one where full secondary proof was made, independent of the exemplification," and that "the decision can not be regarded as allowing a certified copy or exemplification of a bad record, even as secondary evidence, except in connection with other proof." 2 C. & H.'s Notes to Phill. Ev. 460. There are other cases where corroborating evidence has been required before receiving an unauthorized copy of an instrument. 2 C. & H.'s Notes to Phill. Ev. 460; 2 Phill. Ev. 241. In *Stetson* v. *Gulliver*, 2 Cush. 494, an office copy of a defeasance, not acknowledged, but recorded, was received as secondary evidence against the party in whose favor it was made, he refusing to produce the original upon notice. The plaintiff had proved an absolute deed from the defendant, and offered the copy of the defeasance, bearing the same date, to show that his title was by way of mortgage. The objection taken was, that the defeasance, not having been acknowledged, could not have been legally put on record. The court, after recognizing the general rule, held the copy rightly admitted, "not because the fact of being recorded gave it any superiority over other mere copies, but because the case was one in which secondary evidence was admissible. The defendant, after notice, not having produced the bond or given any account of it, any copies were admissible as secondary evidence." It was assumed in the opinion that the original instrument was in the hands of the defendant. It is intimated by *Eastman*, J., in *Forsaith* v. *Clark*, 21 N. H. 408, that, upon the loss of an ancient charter of a town, and the destruction of the original record of it in the office of the secretary of the state, a certified copy from that office of a record made there a few years after the date of the original, from a copy issued and certified from the original, might be received as secondary evidence. But the question was not decided. There the question was to some extent one of public interest, the charter was ancient, and there was evidence tending to show the loss of the original, and the destruction of the original record of it by fire. This copy had been entered by the secretary of the province on the records, in his office, belonging to the government from which the original had issued, and had stood upon those public records for a century, and for a long series of years rights had been exercised and titles claimed under the original charter. Whether in *Farrar* v. *Fessenden*, 39 N. H. 277, the office copy was admitted upon the ground that the record of the instrument having been made evidence by a special reference to it and to the instrument, in the description of a deed properly in evidence, the certificate of the officer having lawful custody of the record was sufficient (see *Stetson* v. *Gulliver*, 2 Cush. 494); or because the instrument purporting to convey real estate in the usual form of a

deed, properly witnessed and acknowledged, but wanting a seal, was entitled to record, or upon some other view, we need not inquire. Nor is it necessary, in the present case, to examine the correctness of such positions, or to reëxamine that decision; for that case was not intended to be and is not an authority for the broad proposition that an office copy of an unauthorized record is, of itself, evidence of the existence and contents of the instrument purported to be recorded. It may be remarked that there was evidence in that case tending to show a long possession according to the purport of the instrument, which, from its date, appeared to be more than twenty years old, and also that the party against whom the copy was offered, claimed title under the signer of the instrument so recorded.

In England, copies of the enrollments of certain deeds, which, though not needing registration, had been enrolled upon the acknowledgment of the releasor or bargainor, have, in certain cases, been received as evidence against him and those claiming under him, but against no one else. 2 Phill. Ev. 245, 247. There is also a class of cases depending upon a somewhat different principle, in which original entries, though not required by law, have, when made under the proper circumstances, been admitted as evidence of reputation, where that was competent. We have failed to find, in these decisions, or any where, what we deem sufficient authority to justify a departure from the general rule in the present case, for here the only evidence of the existence of the original was an office copy of a deed which had not been acknowledged.

Under the statutes in force when this deed is alleged to have been executed and recorded, such a deed was not entitled to record, unless acknowledged, except in two classes of cases: first, in cases of the absence or death of the grantor before acknowledgment, where proof before a court of record in this State was made equivalent to acknowledgment; and, second, in case the grantor refused to acknowledge his deed (Act 1791; Laws of 1805, 156); for it was the duty of the register "to record all deeds and instruments in his office to be recorded, that should be brought to him for that purpose." Laws of 1805, 50. Aside from the statute thus explicitly defining the register's duty, the nature and purposes of the office would seem sufficient to refute the idea that it was his duty to record every instrument offered for record, without regard to its character. We think such a doctrine would prove quite inconvenient in practice, incumbering the records and embarrassing the register in the performance of his duty, and would be attended with no little danger, in opening a door, in many cases, for the admission of a species of evidence which would be uncontrolled by the checks the statute has generally provided in the case of instruments authorized to be recorded, and which, in the absence of direct statutory authority, we can not suppose the Legislature intended to allow. This view is confirmed by the provision of the statutes allowing a deed duly authenticated and recorded to be also recorded in another county than that where the lands lie, and giving to an attested copy of such record the same validity given to a copy

from the original record, in case of the destruction of the latter; Laws of 1805, 158; Rev. Stat., ch. 130, sec. 5; a provision wholly unnecessary if the law had authorized a record to be made of every instrument.

The second exception only, in the act of 1791, can be in question here, which provides, "That if any grantor or lessor of lands, &c., refuse to acknowledge any deed, &c., by him or her signed, it shall be lawful for the grantee or lessee to put the same on record without any acknowledgment; and such deed, so recorded in the registry of deeds, shall be deemed sufficient caution to all persons against purchasing, attaching or levying execution on the same land for sixty days from the time of recording, and shall, during that time, be good and effectual in law, to all intents and purposes, as though such deed, &c., were duly acknowledged. And any justice of the peace and quorum, after such refusal, at the request of the grantee, &c., may issue a summons for such grantor, &c., to appear before him, &c., to hear the testimony of the subscribing witnesses," &c.; and after provision for the service and return of the summons, it enacts that "the said justice may proceed, whether the said grantor, &c., shall attend said examination or not, to take the proof of the execution of such deed," &c., and that "such proof and a certificate thereof, under the hand of said justice, wherein the presence or absence of the grantor, &c., at such examination, shall be particularly noted, shall be equivalent to the acknowledgment of the grantor before any justice of the peace." Laws of 1805, 157. The registration thus allowed would seem but a provisional one (2 Greenl. Cru., Title 32, ch. 29, sec. 1, note), limited in effect by the act. But the present case calls for no examination of this, for the refusal which constitutes the ground of the exception is not shown to exist. We think the present case must be governed by the doctrine laid down in *Montgomery* v. *Dorion*, 6 N. H. 250, recognized in *Montgomery* v. *Dorion*, 7 N. H. 483, and *Forsaith* v. *Clark*, 21 N. H. 422, and followed in *Atkinson* v. *Bemis*, 11 N. H. 46, under a similar statute. The last case is recognized as the law in *Harvey* v. *Mitchell*, 31 N. H. 582. We see no distinction that can take the present case from the operation of the rule laid down in *Montgomery* v. *Dorion*, unless one can be drawn from the greater lapse of time here, and unless it can be held that, after so long a period, a presumption of the facts essential to the existence of the excepted case arises. Such a presumption can not arise upon the ground that it was the duty of the register to satisfy himself of the fact of the grantor's refusal. It might be quite inconvenient to hold that a mere recording officer must investigate and decide such a question, ordinarily depending upon parol evidence; and, as the statute has no such express provision, we should hesitate before implying such a duty. *Forsaith* v. *Clark*, 21 N. H. 422, is not an authority in favor of such a presumption; for there the deed, on its face, purported to have all the statutory requirements; and, as a convenient rule of practice, the signature of one as a justice of the peace for a county in Massachusetts, was held *primâ facie* evidence of his authority. *Harvey* v. *Mitchell*, 31 N. H. 583. In the present case, the instru-

ment did not purport to show a state of facts entitling it to record. If such a presumption existed, it would have been applied in *Montgomery* v. *Dorion*, as it would have been a presumption of the performance of official duty. The statute providing that the proper certificate of the magistrate should be equivalent to a due acknowledgment, in case of the grantor's refusal to acknowledge his deed, would seem to make such certificate evidence of the refusal. *Catlin* v. *Washburn*, 3 Vt. 38. It may be that a consideration of the policy of our legislation, making authenticated written evidence, in general, essential to the valid registration of a deed, may require us to hold either the statutory certificate, or, in some cases, perhaps, a certified copy of the record of it, or, under proper circumstances, secondary evidence of the certificate, ordinarily necessary, in the absence of a certificate of acknowledgment, to show the proper registration of a deed; for, if the mere fact of registration raised a presumption of its propriety, an acknowledgment of a deed, nearly as old as that in question, might have been presumed in *Atkinson* v. *Bemis*. These considerations would lose none of their force if it should be held that the registration before proof, allowed by the clause in question, is merely provisional, and strictly limited in its effects. It is hardly necessary to say that, in expressing these views, we are not passing upon the question whether such a record, with corroborating circumstances, may not, in some cases, be received, where there is evidence tending to show the existence and loss of the original deed. In the absence of possession, or, indeed, of any corroborative proof, it is not easy to see how any presumption of such refusal by the grantor can arise from mere lapse of time, which derives its importance from the probability or possibility of the loss of the evidence that would have furnished the proof. Math. Pres. Ev. 5–6. Here is nothing to show that John Wendell refused to acknowledge his deed, and, in the absence of all evidence, the mere lapse of time can not render it more probable that he did than that he did not. The case falls within the ordinary rule, and the party asserting the fact must offer some evidence of it; *Emerson* v. *White*, 29 N. H. 491; especially as it would seem, in general, the duty of the grantor, if properly called on, to make the acknowledgment. 1 C. & H.'s Notes to Phill. Ev. 459–461. We have seen that the mere circumstance of the entry of the deed upon the record by the register raises no such presumption, and we can derive none from the simple fact that it was presented to the register and a record of it made; *Williams* v. *Bass*, 22 Vt. 352; for allowing such a presumption would, in many cases, defeat the object of the law requiring an acknowledgment as a verification of a deed necessary to entitle it to record, and would often operate as a practical repeal of that provision of the statute. For these reasons we think no such presumption can be made. We have not found it necessary to inquire into the effect of such a provisional record, when properly made, after the lapse of the sixty days, and where no further proceedings are had; for we think a case is not shown authorizing the deed in question to be recorded at all, and that, therefore, the office copy of this unauthorized record was incompetent to show the

existence and contents of the alleged original. Whether such a copy is admissible in any case as secondary evidence, we have not been called on to decide.

It follows that the copy was improperly admitted in this case. It is held in this State that "the declarations of deceased. persons, who were so situated as to have the means of knowledge, and had no interest to misrepresent, are competent evidence upon a question of boundary, whether the same pertain to public tracts or private rights." *Adams* v. *Stanyan*, 24 N. H. 417. But this principle does not make this copy admissible; for, passing over the question of the competency of John Wendell's declaration, the copy not being his declaration, and furnishing no evidence that such a deed was ever executed by him, fails to show any declaration of John Wendell. It does not purport to be a declaration of the register, and if it did, he is not shown to be dead, or to have had any means of knowledge as to the boundary in dispute, and he can not be presumed to know the boundaries of particular farms in his county. And if not admissible as the declaration of either of these, in the absence of all evidence as to who the declarant was, it can not come within the principle stated. Waiving the inquiry whether, in this State, reputation, in its broad sense, is evidence as to ancient boundaries merely private, we do not think the copy was competent to show reputation in this case. If it were to be held here as in Massachusetts, according to *Stetson* v. *Gulliver*, that a certified copy is admissible wherever the record itself would be, the case is not altered, for this record seems to us inadmissible to show reputation in this case. It is not direct evidence of general reputation; 1 Greenl. Ev., sec. 135; 1 Stark. 28; Phill. Ev. (1 C. & H.) 246; and, at most, is but a specific declaration or recital. The cases ordinarily occurring are where the original documents themselves, or in proper cases, secondary evidence of their contents have been produced; but here is no evidence of the existence of the original deed. *Padwick* v. *Witticomb*, 28 E. L. & E. 42. This record could not be received upon the ground that it was an entry in a public book, because it was an unauthorized record, if for no other reason. Unless it was made under the sanction of some proper authority, it must stand upon the ordinary ground, and it must appear that the author of the recital or declaration had the means of knowledge; for the question respects no public right. *Bow* v. *Allenstown*, 34 N. H. 366. This case is distinguished from *Willey* v. *Portsmouth*, 35 N. H. 310, for there the question was one of general and public interest, and the ancient document admitted was the genuine and original record of the laying out of a highway. This record was not authorized by the statutes in force then, and we see no ground to imply any authority for it. Only the Legislature could authorize the record, and, in the absence of any legislative sanction for this entry, we can presume none; for neither is this office under the immediate and special control of the Legislature, nor is the document of any general or public interest, nor is any act of corroboration shown from which a presumption could arise. (See *Forsaith* v. *Clark*.) This record stands like any other unauthorized record

or entry, and can not be received in this case as evidence of reputation. *Padwick* v. *Witticomb.* The record was not admissible as an ancient document purporting to be part of the *res gestœ*, for no transaction was shown of which it purported to be a part. Failing to prove a deed, it showed no act of ownership or exercise of right; and no evidence of any act, ancient or modern, done in reference to it, was offered. 1 Phill. Ev. 273–278 ; 2 Stark. Ev. 907, 908 ; 1 Greenl. Ev., sec. 141. As we fail to find any principle upon which the competency of this office copy of an unauthorized record can be supported in the present case, the verdict must be set aside.

*New trial granted.*